UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY LEE McCURDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 6318 |
| vs. ) | |
| ) | Magistrate Judge Rowland |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jerry Lee McCurdy, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

**I. Procedural History**

McCurdy filed applications for disability insurance benefits and supplemental security income on September 11, 2007, alleging he became disabled on August 4, 2005. (R. 122-36). The Social Security Administration denied his application initially and then again upon reconsideration. (R. 55-63, 68-75). McCurdy requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 7, 2010. (R. 22). At the hearing, McCurdy (represented by counsel) testified, as did a medical expert and a vocational expert. (R. 22-54). On September 13, 2010, the ALJ issued a decision finding that McCurdy was not disabled because he could perform

sedentary work with certain restrictions. (R. 9-21). The Appeals Council then denied McCurdy's request for review, rendering the ALJ's decision final. (R. 1-4).

McCurdy requested judicial review, for which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned to Magistrate Judge Nolan on February 2, 2012 for all further proceedings, including entry of final judgment. (Dkt. 20). Upon Judge Nolan's retirement from the bench, the case was reassigned to Magistrate Judge Rowland on October 1, 2012. (Dkt. 27).

## II. Summary of Administrative Record

Jerry Lee McCurdy was born on February 19, 1955. (R. 122). He has a twelfth-grade education and served in the U.S. Army from 1974 to 1976. (R. 124). He is divorced with four children. (R. 26). He has lived by himself for the past 17 years. (R. 26).

As for his employment history, McCurdy has worked a variety of jobs, including customer service representative of a cell phone company, a purchasing clerk, a deck hand on a tug boat, a district manager for a newspaper, and a parts washer in a factory. (R. 49, 179-85).

On August 5, 2005, while working for North American Acquisition as a parts washer, McCurdy suffered a work-place injury to his back. (R. 26.) He received a workers compensation settlement of $18,627.06 for a period of "temporary total disability" from August 6, 2005 through February 12, 2007 and April 12, 2007 through July 8, 2007. (R. 148-19). He made several attempts to return to work at

North American Acquisition, but found that he could not perform in any function at the factory. McCurdy then tried to find employment elsewhere. He got a job at Sears as a sales associate. (R. 32). Then, on September 4, 2007 McCurdy suffered a heart attack. (R. 455-73). He received three angioplasties and four stents. (*Id*. and R. 27). McCurdy never returned to work after his heart attack. (R. 27).

In his application for social security benefits, McCurdy states that he experiences back pain, leg pain, shortness of breath, and chest pain. (R. 30). McCurdy takes medication for his heart condition (cholesterol medication and blood pressure medication) which makes him sleepy, effects his memory, and makes it difficult to maintain concentration. (R. 28). McCurdy also takes pain medication for his back "as needed." (R. 30).

McCurdy lives by himself in an efficiency secured through the Elgin Public Housing Authority. (R. 33). He goes shopping for groceries about once a month and does his own light cooking and cleaning. (R. 28). His back problems make it difficult for him to get dressed, but McCurdy is otherwise capable of tending to his own personal care and hygiene. (R. 28). He does not drive, but is capable of occasionally taking public transportation. (R. 29, 207). A friend of McCurdy's who was interviewed by the Social Security Administration, Glenn Weronko, described McCurdy as always seeming to be out of breath. Weronko also said McCurdy "moves like a turtle" since his back injury. (R. 217).

Records from McCurdy's treating physicians show that immediately following his back injury, McCurdy was diagnosed with "lumbrosacral radicular syndrome,

3

right worse than left, severe, disabling low back pain and right sciatica." (R. 243). His treating physician, Dr. Roger Tolantino, referred him for an MRI and spine x-rays, which revealed early osteoarthic changes at position L4-5 with mild generalized posterior disc bulging. (R. 452-54). From October 2005 through May 2007, McCurdy received regular treatment for his back injury. Multiple MRIs as well as more invasive diagnostic tests, such as a CT myelogram[1] and a bone scan, led to the following diagnoses: degenerative disk disease (R. 422, 438); chronic radiculopathy (nerve damage) (R. 428); increased uptake at the right acromioclavicular joint (R. 423); mild loss of disc space height (R. 422); small osteophyte formation (*id.*); mild central canal spinal stenosis (*id.*); disc protrusion and bulging (R. 413); minimal encroachment upon the thecal sac; and early avascular necrosis (R. 399)**.** McCurdy received multiple epidural and steroid injections to address his pain, as well as a right acromiok-clavicular joint injection. (R. 416, 477).

Records concerning McCurdy's heart condition indicate that his September 4, 2007 heart attack required angioplasties and stents. (R. 465). He was hospitalized for three days. (R. 469). He then complained of chest pain and shortness of breath. (R. 477). He received continued cardiovascular treatment for hypertension and hyperlipidemia (R. 531-536).

In addition to evidence from McCurdy's treating physicians, the ALJ also considered a physical evaluation prepared by the Illinois Department of Disability

---

[1] CT myelograms involve the spinal tap insertion of dye into a patient's spine followed by Xray to reveal nerve damage.

4

Determination Services ("DDS"). (R. 556). That evaluation was prepared on the basis of the medical records on file with the Social Security Administration. The DDS evaluator did not examine McCurdy in person. The DDS's physical residual functional capacity assessment concludes that McCurdy suffers from certain "exertional limitations" (cannot lift more than 20 pounds, cannot stand for more than 6 hours in a workday, etc.), but experiences no other limitations. (R. 566-70). The evaluator also concluded that McCurdy's complaints of back pain, numbness in hands, and difficulty standing were not supported by the evaluator's own objective findings.

The DDS's psychiatric evaluation (referred to as a "psychiatric review technique") evaluated McCurdy's condition under listing 12.04 Affective Disorder, specifically "mood disorder secondary to medical condition." (R. 620). In assessing that listing's "B" criteria, the evaluator concluded that McCurdy experienced only "mild" functional limitations in the following categories: (1) Restriction of Activities of Daily Living; (2) Difficulties in Maintaining Social Functioning; and (3) Difficulties in Maintaining Concentration, Persistence, or Pace. (R. 495). In assessing the "C" criteria, the evaluator found that none of the "C" criteria[2] were present. (R. 628).

---

[2] 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. pt. 404, Subpt. P, app. 1, Listing 12.04.

The ALJ also considered what is known as a "consultative evaluation" prepared by Dr. Roopa K. Karriat at the request of the Social Security Administration. (R. 561-65). Dr. Karriat spent approximately 43 minutes reviewing the medical records, evaluating McCurdy, and preparing her report. (R. 561). She concluded that McCurdy has (1) a history of hypertension and hypercholesterolemia, which is now well controlled; (2) coronary artery disease with recent heart attack and stent placement, which causes occasional chest pain; and (3) history of low back pain with mildly decreased range of motion on exam. (R. 564).

The ALJ also considered a psychological consultative evaluation prepared by licensed clinical therapist Barbara Sherman at the request of the Social Security Administration. (R. 612). During the examination, Sherman observed that McCurdy exhibited diminished attentional focus and impaired concentration. (R. 614). Sherman concluded that McCurdy suffers from a mood disorder due to his medical condition and depression. (R. 615).

In addition to the psychological consultative evaluation, the ALJ also considered testimony from impartial medical expert, Dr. Bernard Stevens. Dr. Stevens testified that McCurdy suffers from degenerative disk disease with the lumbar spine and cervical spine, arthritis in his right shoulder, and coronary artery disease. (R. 35). Dr. Stevens opined that McCurdy has the functional capacity to perform only sedentary work. (R. 36).

Finally, the ALJ considered the opinion of Cheryl R. Hoiseth, and impartial vocational expert. Ms. Hoiseth testified that – given McCurdy's age, education, work

6

experience, and residual functional capacity – he would be able to perform his past work as a purchasing clerk. (R. 52).

### III. Standard of Review

The standard for review of an appeal from the Social Security Administration denying disability benefits is well established. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. §

404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in his or her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S.

8

389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

**IV. Discussion**

McCurdy raises three arguments in support of his request for reversal of the ALJ's decision: (A) the ALJ erred in ruling, at Step Three, that McCurdy's medical conditions are not conclusively disabling under Listing Sections 1.04 (Disorders of the spine); (B) the ALJ's credibility determination was patently wrong because it did not refer to any of McCurdy's statements and instead merely incorporated boilerplate language; and (c) in determining McCurdy's RFC, the ALJ failed to undertake a function-by-function assessment of McCurdy's work-related abilities, failed to consider all of the medical evidence, and failed to set forth a narrative discussion as required by SSR 96-8(p) and 83-10.

**(A) The ALJ's evaluations of Listings 1.04 (Disorders of the spine)**

McCurdy first argues that the ALJ should have found his back injury to be *per se* disabling under Step Three. To streamline the disability decision process, the social security regulations provide a list of certain medical conditions deemed severe enough to *per se* warrant a finding of disability. 20 C.F.R. pt. 404, subpt. P, app. 1; *Bowen v. New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). A claimant must satisfy all of the criteria of a given listing. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). The claimant must also show that the criteria persisted for at least a year, so as to meet the durational requirement of Section 423 (d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of

10

any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . .").

In this case, McCurdy argues that his back condition qualifies under Listing 1.04 (Disorders of the spine), which provides, in relevant part:

> A disorder of the spine (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) that has resulted in the compromise of a nerve root (including cauda equine) or the spinal cord with [] the following:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)….

20 C.F.R. pt. 404, subpt. P, app. 1. The Commissioner responds by referencing three medical opinions, all of which conclude that McCurdy did not have a listing-level impairment. The Commissioner also argues that, even accepting McCurdy's argument that the criteria of Listing 1.04 are all referenced somewhere within the record, there is no evidence supporting the durational requirement, *i.e.*, that the impairment lasted for at least a year.

The Court agrees with the Commissioner. McCurdy cites to 39 separate portions of the record. Although some of those record citations refer to Listing 1.04 criteria, they do not specifically satisfy all criteria. For example, although the record references "herniated disc" and "disc protrusion," it does not reference "evidence of nerve root compression," as required by the listing. To the extent the missing criteria might be extrapolated from other references to general pain and limitations

11

in range of motion, the Court cannot play doctor and make those extrapolations itself. *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (court cannot "play doctor" by using lay opinions to fill evidentiary gaps in the record). Even if the Court were to accept McCurdy's argument that the missing criteria were somewhere present in the record, McCurdy has still failed to satisfy the durational requirement of the listing. Because the medical experts in this case opined, after their own review of the record, that the criteria were not satisfied, the Court finds no error with the ALJ's Step Three determination.

**(B) The ALJ's credibility assessment**

The ALJ in this case determined that, although McCurdy suffers from certain medical conditions, he is capable of working, and therefore not disabled. Specifically, the ALJ found that McCurdy has the "residual functional capacity" ("RFC") to perform sedentary work involving no more than moderate exposure to temperature extremes or high humidity.[3] (R. 15). In making that determination, the ALJ found that McCurdy's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible because they lacked consistency and were contradicted by medical records indicating that McCurdy's physicians were unable to identify a physiologic basis for his pain.

In his decision, the ALJ stated in part:

---

[3] CFR § 404.1567(a)("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 16).

The Court agrees with McCurdy that the above language is boiler plate. This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony" and fails to link the conclusory statements made with the objective evidence in the record. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, as the Commissioner in this case notes, the simple fact that an ALJ used boilerplate language does not automatically discredit the ALJs finding, if he otherwise points to information that justifies his credibility determination. *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013).

Here, the "other evidence" are (1) a "May 25, 2007 documented opinion of claimant's treating physician indicating that claimant's complaints lacked consistency and therefore credibility," (R. 16); and (2) the general lack of objective medical evidence substantiating McCurdy's complaints of pain and impairment. As described below, the Court finds that neither of the above serves as a sufficient basis for the ALJ's credibility determination.

First, as for the "May 25, 2007 documented opinion," contrary to the ALJ's description, the document does not appear to have been created by McCurdy's treating physician. Instead, it appears to have been created by some type of

13

consulting physician during McCurdy's workman's compensation case. The purpose of the document is not entirely clear because the document is incomplete; the first two pages are missing. (*See* R. 343 starting at page "3 of 5"). The intact pages indicate that a Dr. Richard Noren performed a physical examination of McCurdy and also reviewed the records created by McCurdy's treating physicians. The doctor then opines about the causal relationship between McCurdy's workplace accident and his injuries. Dr. Noren also expresses some disagreement with the course of treatment devised by McCurdy treating physician, contending that the epidural injections that McCurdy received to mitigate back pain "appear[] to be unwarranted." (R. 344).

In any case, the ALJ's reliance on the document was in error. The document is incomplete, and the ALJ cannot rule on the basis of an incomplete record. *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir.1993) (ALJ has duty to develop a complete record). Moreover, the ALJ erred in giving the document the weight of a treating physician's opinion, because it is unlikely that Dr. Noren was McCurdy's treating physician. 20 C.F.R. § 404.1527(d)(2); *Simila v. Astrue*, 573 F.3d 503, 514–15 (7th Cir. 2009) (treating physician opinions must be given controlling weight, so long as they are consistent with the record).

Second, as for the lack of objective medical evidence, an ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (*citing* SSR 96–7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d

14

804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96–7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); see 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p. Thus, although our review of an ALJ's credibility assessment is deferential, *see Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000), we cannot uphold the ALJ's determination here. It was an error for the ALJ to discredit McCurdy's statements about the intensity, persistence, and limiting effects of his symptoms because of a perceived lack of objective medical evidence.

### (C) The ALJ's RFC determination

Because the Court rules that the error noted in Section B above warrants reversal, it need not address McCurdy's third argument regarding the ALJ's RFC determination.

## V. CONCLUSION

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: September 11, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge